Present:  All the Justices

PETER EDWARDS

v.  Record No. 972635    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                   June 5, 1998

GOVERNMENT EMPLOYEES
INSURANCE COMPANY

UPON QUESTIONS OF LAW CERTIFIED BY THE UNITED
STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Under the provisions of Rule 5:42, the United States Court of Appeals for the Fourth Circuit certified to this Court two questions of Virginia law asking whether a plaintiff in a personal injury action was "using" or "occupying" a motor vehicle at the time he was struck by another car.  The facts as stated in the certification order are set forth below.

Terry Presmont asked Peter Edwards, an acquaintance, to change a flat tire on Presmont's car that was parked on a street in the District of Columbia.  Presmont gave Edwards a key to the car.  Edwards did not enter the driver's area of the car or use the key for any purpose other than to open the trunk.

Edwards took the jack and the spare tire out of the trunk. He intended to install the spare tire in order to drive the car to a service station to have the flat tire repaired.  After raising the car with the jack, Edwards began to take off the lug nuts to remove the flat tire.  Before he could remove all the lug nuts, he was struck in the ankle by a car driven by an

uninsured motorist.  Edwards suffered a fractured ankle for which he received medical treatment.

At the time of the accident, Presmont was a Virginia resident.  Her car was insured by a motor vehicle liability insurance policy (Policy) issued in Virginia by Government Employees Insurance Company (GEICO).  The Policy provides liability coverage to insured persons occupying the insured vehicle.  The term "insured" is defined by the Policy in relevant part as "any other person while occupying an insured motor vehicle."  "Occupying" is defined by the Policy as "in or upon or entering into or alighting from" the insured vehicle.

Edwards, a resident of the District of Columbia, filed a complaint against GEICO in the United States District Court for the District of Maryland (Southern Division), seeking damages for his personal injuries under the uninsured motorist and medical payment provisions of the Policy.  GEICO filed a motion for summary judgment, asserting that Edwards did not qualify as an "insured" under Code § 38.2-2206[*] because he was not "using"

---

[*]At the time of Edwards' injury, Code § 38.2-2206(B) provided:

> "*Insured*" as used in subsections A, D, G, and H of this section means the named insured and, while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured, and a guest in the motor vehicle to

the insured vehicle at the time of the accident. GEICO also argued that Edwards was not "occupying" the insured vehicle within the meaning of the Policy definition.

The district court granted GEICO's motion for summary judgment, concluding that Edwards was neither "using" nor "occupying" the insured vehicle at the time of the accident. Edwards noted an appeal to the United States Court of Appeals for the Fourth Circuit, which presented the following certified questions to this Court:

1. Was Edwards, who at the time of the accident was repairing a vehicle parked on the street with the intention of driving it to a service station, "using" the vehicle within the meaning of Virginia Code § 38.2-2206(B)?

2. Was Edwards, who at the time of the accident was changing the tire of a vehicle parked on the street with the intention of driving it to a service station for further repairs, "occupying" the vehicle within the meaning of the GEICO policy definition?

Edwards argues before this Court that he was "using" the insured vehicle at the time he was struck and, therefore, qualifies as an "insured" under Code § 38.2-2206(B). In support of this argument, Edwards chiefly relies on Great American Insurance Company v. Cassell, 239 Va. 421, 389 S.E.2d 476 (1990). There, we held that a fire fighter, who was struck by a vehicle while standing approximately 20 to 25 feet from his fire

which the policy applies or the personal representative of any of the above.

3

truck, was "using" the truck because he was engaged in a transaction essential to the truck's use at the time of the accident.  Id. at 424, 389 S.E.2d at 477.  Edwards asserts that, like the fire fighter in Cassell, he was "using" the insured vehicle when he was struck because the act of changing a flat tire was essential to use of the car.

Edwards also contends that he was "occupying" the insured vehicle within the meaning of the Policy definition.  Edwards argues that his close proximity to the insured vehicle and his intention to occupy the car once his task was completed provide sufficient evidence to support a conclusion that he was "occupying" the insured vehicle.

In response, GEICO first asserts that Edwards was not "using" the insured vehicle when he was struck because the car was not involved in any "mission" at the time of the accident.  GEICO also argues that Edwards was not "occupying" the insured vehicle within the meaning of the Policy definition.  Citing Pennsylvania National Mutual Casualty Insurance Company v. Bristow, 207 Va. 381, 385, 150 S.E.2d 125, 128 (1966), GEICO contends that Edwards was not "upon" the insured vehicle because, while he was in close proximity to the car, he did not have sufficient intent to use it.  GEICO also relies on Stern v. The Cincinnati Insurance Company, 252 Va. 307, 311, 477 S.E.2d

4

517, 519 (1996), in which we held that a child crossing a street to board a school bus was not "occupying" the bus.

We first consider the question whether Edwards was "using" the insured vehicle at the time of the accident within the meaning of Code § 38.2-2206(B). The statute defines "insured," in material part, as "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured." Id. The coverage mandated by the statute is limited to injuries sustained by the permissive user while actually using the insured vehicle. Randall v. Liberty Mut. Ins. Co., 255 Va. 62, 65, 496 S.E.2d 54, 55 (1998); Insurance Co. of North America v. Perry, 204 Va. 833, 838, 134 S.E.2d 418, 421 (1964).

In determining whether Edwards was "using" the insured vehicle at the time he was injured within the meaning of Code § 38.2-2206(B), the relevant inquiry is whether "there was a causal relationship between the accident and the use of the insured vehicle as a vehicle." Randall, 255 Va. at 66, 496 S.E.2d at 56; accord United States Fire Ins. Co. v. Parker, 250 Va. 374, 377, 463 S.E.2d 464, 466 (1995); Travelers Ins. Co. v. LaClair, 250 Va. 368, 372, 463 S.E.2d 461, 463 (1995). The coverage mandated by the statute for "use" of a vehicle is not limited to the transportation function of the vehicle. Randall, 255 Va. at 66, 496 S.E.2d at 56. "If the injured person is

using the insured vehicle as a vehicle and as an integral part of his mission when he is injured, he is entitled to UM/UIM coverage under § 38.2-2206."  Id.; accord Parker, 250 Va. at 377-78, 463 S.E.2d at 466; Cassell, 239 Va. at 424, 389 S.E.2d at 477.

Our decisions in Randall and Cassell are determinative of this inquiry.  In Randall, a highway worker was struck and killed by a car while placing lane closure signs along the side of a highway.  He had driven the insured vehicle to the site, left the engine running, and kept on the flashing yellow bubble light on top of the truck's cab while completing his task.  The worker was six to ten feet behind the truck on the shoulder of the road when he was struck.

We observed in Randall that the specialized warning equipment and its relationship to the worker's task made use of the truck more than merely a means of transportation.  255 Va. at 67, 496 S.E.2d at 57.  We concluded that the worker was "using" the insured truck when he was struck because he was utilizing the truck's specialized equipment to perform his mission.  Id. at 67, 496 S.E.2d at 56-57.

In Cassell, a fire fighter was standing 20 to 25 feet away from the fire truck when he was struck and killed by a car.  The insured fire truck had transported to the scene both the fire fighter and the equipment used to fight the fire.  The truck

also was used at the scene as a physical barrier to restrict traffic flow. At the time the fire fighter was struck, he was using a writing pad and a clipboard that he had taken from the truck to complete a required fire incident report. We concluded that the fire fighter was "using" the fire truck at the time of the accident because the truck was an integral part of the fire fighter's mission, which had not been completed when the accident occurred. 239 Va. at 424, 389 S.E.2d at 477.

Like the highway worker in Randall and the fire fighter in Cassell, Edwards was using the insured vehicle's equipment at the time of the accident to perform his mission. That mission was to drive the car to a service station to have the flat tire repaired. An integral part of the mission required use of the jack to remove the flat tire and to place the spare tire on the vehicle. Thus, Edwards was in the process of performing a transaction essential to the use of the insured vehicle when he was struck.

In using the vehicle's equipment to accomplish his mission, with the immediate intent to drive the vehicle after replacing the tire, Edwards was using the insured vehicle as a vehicle and as an integral part of his mission at the time of the accident. Thus, we conclude that there was a causal relationship between the accident and Edwards' use of the vehicle as a vehicle. See

7

Randall, 255 Va. at 66, 496 S.E.2d at 56; Cassell, 239 Va. at 424, 389 S.E.2d at 477.

We disagree with GEICO's contention that Stern, as well as Perry, 204 Va. at 833, 134 S.E.2d at 418, compels us to reach a different conclusion. In Stern, we held that a school bus was used by its driver to create a safety zone for a child crossing the street to board the bus, and that the driver's employment of the safety devices did not constitute a use of the bus by the child. 252 Va. at 312, 477 S.E.2d at 520. In Perry, we concluded that a police officer, who was serving an arrest warrant when struck by an uninsured motorist, was not using his police cruiser at the time of the accident. We based this conclusion on the fact that the officer had removed the key from his vehicle, gotten out, and walked 164 feet away from the cruiser when he was struck. 204 Va. at 838, 134 S.E.2d at 421. Unlike Edwards in the present case, the injured persons in Stern and Perry were not engaged in a transaction essential to the vehicle's use at the time of the accident. See Cassell, 239 Va. at 424, 389 S.E.2d at 477. Therefore, we answer the first certified question in the affirmative.

We next consider the question whether Edwards was "occupying" the insured vehicle within the meaning of the Policy definition. The Policy defines "occupying" as meaning "in or upon or entering into or alighting from" the motor vehicle. We

8

considered this same policy definition in Bristow, and we conclude that our decision in that case primarily governs the present issue whether Edwards was "occupying" the insured vehicle. In Bristow, a passenger in a truck had stopped to render assistance to the owner of a stalled vehicle. In attempting to restart the stalled vehicle, Bristow, the "Good Samaritan," leaned over the motor and reached with his hands to examine some of the wires. During the time that his legs were touching the car's bumper, a vehicle struck the stalled automobile from the rear. As a result of the impact, Bristow was "thrown over in the ditch" and injured. Bristow neither entered nor intended to enter the disabled vehicle. 207 Va. at 382, 150 S.E.2d at 126.

In considering whether Bristow was "occupying" the stalled vehicle when he was struck, within the meaning of the policy definition, we concluded that the determinative question was whether Bristow was "upon" the stalled vehicle when he was injured. We observed that the word "upon" must be considered in relation to the word in the policy that it defines, namely, the word "occupying." We stated that "a person may be said to be 'upon' a vehicle when he is in a status where he is not actually 'in,' or is not in the act of 'entering into or alighting from,' the vehicle, but whose connection therewith immediately relates to his 'occupying' it." Id. at 385, 150 S.E.2d at 128. Based

9

on this definition, we held that Bristow was not "upon" the stalled vehicle and, thus, was not "occupying" it because his touching of the vehicle was merely incidental to his act of assisting the driver of the disabled car.  Id.

In Stern, we also considered the insurance policy term "occupying."  In concluding that the injured child was not "occupying" the bus when she was struck "several" feet from the bus, we observed that the word "occupying" denotes "a physical presence in or on a place or object."  252 Va. at 311, 477 S.E.2d at 519.

Applying these principles, we conclude that Edwards' act of attempting to replace the tire on the insured vehicle was not an act immediately related to occupancy of the vehicle.  Although Edwards ultimately intended to occupy the vehicle, his actions at the time of the accident immediately related to his attempt to change the flat tire.  Further, Edwards' actions did not constitute a physical presence in or on the insured vehicle.  Thus, Edwards was not "occupying" the insured vehicle at the time of the accident within the meaning of the GEICO policy definition, and we answer the second certified question in the negative.

First certified question answered in the affirmative.
Second certified question answered in the negative.

10